IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIE PENNIX | * | |
| Plaintiff | * | |
| v | * | Civil Action No. RDB-16-1643 |
| SGT. STANDFORD and LT. DRUMMOND | * | |
| | * | |
| Defendants | | |

***

## MEMORANDUM

In response to the above-captioned civil rights complaint, Defendants filed a Motion to Dismiss or for Summary Judgment. ECF 19. Plaintiff opposes the motion. ECF 21. The Court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Defendants' motion, construed as a Motion for Summary Judgment, shall be granted and judgment shall be entered in their favor.

**Background**

Plaintiff Willie Pennix is an inmate committed to the custody of the Maryland Division of Correction and confined at Eastern Correctional Institution (ECI). He alleges that on July 20, 2013, his cellmate, Stewart Partlow, stabbed him between 27 to 30 times. Pennix claims that prior to the date of his assault he informed Defendants Standford and Drummond that Partlow was a risk to his safety. Pennix states he asked not to be placed in the cell with Partlow when he was moved to the cell where Partlow was housed, but he was required to move in anyway. Pennix claims that Defendants failed to protect him from harm in violation of the Eighth Amendment. ECF 1 at p. 3.

In response to the Complaint, Defendants admit that Pennix was stabbed multiple times by Partlow on January 28, 2014, and that he sustained multiple injuries which required his emergency transport to an area hospital for treatment. Defendants state, however, that there is no evidence that prior to the assault on Pennix, that Partlow presented a threat of harm to his safety. Rather, the investigation that was conducted immediately after the assault was discovered revealed that a disagreement had arisen between the two men on the morning of the incident and the assault occurred without warning. ECF 19 at Ex. 1.

According to the information gathered in the investigation conducted by the Internal Investigation Division (IID) for the Department of Public Safety and Correctional Services that followed the assault, Pennix was found, at approximately 7:10 p.m., lying on the floor just outside of his assigned cell door, injured with multiple stab wounds. *Id.* at p. 2. Officer Nehemiah King was conducting rounds on the housing unit when an inmate told him that Pennix had been injured and that King should go to the second-floor tier to assist him. *Id.* at p. 5. King went to the second-level, found Pennix as described, immediately called for assistance over the radio, and asked Pennix what happened to him. *Id.* Pennix told King that his cellmate (Partlow) had stabbed him. *Id.*

After responding officers arrived on the scene, King went to the dayroom to locate Partlow and discovered him in the shower, washing blood off of his body. *Id.* King ordered Partlow out of the shower and placed him in handcuffs without incident. *Id.*

Pennix received initial first-aid assistance from a nurse who responded to the housing unit. Upon her arrival, she called for additional assistance and instructed correctional officers to call 911, due to the large amount of blood on the scene. ECF 19 at Ex. 1, p. 36. Pennix was loaded onto a gurney by correctional officers who had responded to the scene and moved to the

medical unit. *Id.* Attempts were made to control the bleeding while the ambulance was en route to the prison. *Id.* Pennix was taken to Peninsula Regional Medical Center (PRMC) where he was treated for approximately 13 stab wounds, none of which were life threatening but were treated as serious given the severity and the number of wounds sustained. *Id.* at p. 6. Six of the wounds Pennix sustained were to his head, five were to his back, one to his left arm, and one wound was sustained to his left shoulder. *Id.*

The IID was contacted regarding the incident at 7:45 p.m. and the case was assigned to Detective Sergeant William Sage at 8:00 p.m.. ECF 19 at Ex. 1, p. 6. Sage arrived at PRMC at 9:00 p.m. to conduct an interview with Pennix, who informed Sage that at the time of the assault he was sitting on the toilet when Partlow entered the cell and stabbed him repeatedly with a "shank." *Id.* Sage states that Pennix told him that he had not had "serious prior issues with . . . Partlow in the past but he had a verbal altercation with [him] earlier in the day." *Id.* Sage further reports that Pennix told him he believed Partlow had been "messin" with his Playstation and that this was the cause of the verbal altercation. *Id.*

Sage arrived at ECI at approximately 10:30 p.m. and reported to the housing unit where the assault took place, HU 3, A tier. ECF 19 at Ex. 1, p. 6. Pennix and Partlow occupied cell 46 and Sage noted that most of the blood was concentrated at the entrance of that cell. *Id.* After taking pictures of the scene, including the shower area where Partlow was discovered attempting to wash the blood from his body, Sage interviewed Officer King. *Id.* at pp. 6 – 7.

King related that when he discovered Partlow in the shower he was wearing only gym shorts and black shoes. *Id.* at p. 7. When King was escorting Partlow to the medical unit he said that Partlow stated: "I told him to leave me alone. He kept bothering me." *Id.*

3

Sage interviewed Partlow, advising him of his rights which Partlow waived. *Id.* Partlow related that he had assaulted Pennix because he felt Pennix was verbally abusive and that he was constantly accusing him of things. *Id.* Partlow further explained that on the day of the assault, Pennix accused him of using his Playstation and claimed Pennix had yelled at him for a long period of time. *Id.* Partlow claimed he could not take it any longer and planned to assault Pennix. *Id.* Partlow admitted to obtaining a "shank" but would not disclose the location from which he retrieved same. *Id.* He then entered the cell where Pennix was sitting on the toilet and struck Pennix repeatedly with the weapon until he heard other inmates on the tier telling him to stop or he would "kill him." *Id.* Partlow then dropped the weapon on the tier and went to the dayroom shower to wash the blood from his body. *Id.* Partlow provided the following written statement:

> In Illustrating my mind frame in my decision to assault my cellmate, I Stewart Partlow 317677 made a conscious decision to do so because I was tired of being bullied and verbally abused on a regular basis by my cellmate Willie Pennix. I am only 5'08', 140 lbs., and my cellmate is at least 6'03" and 245 at least. He is a weight lifter and just continued to pressure me with his verbal abuse which begun to handicap my mental stability as well. Things became so bad for me that I started to feel unsafe being confined in a cell with him. He is strong enough and big enough to man handle me as he wish. When I was 20 years old I was raped at MCTC by my cell buddy while in lockup and I never wanted to be in that situation again by feeling so violated and helpless. Although my cellmate never made any advances upon me in such a manner his aggression and abuse was such that I felt for safety and tonight I just could no longer tolerate the fear I felt being locked in a cell with him. So I unleashed all my pent-up rage and fury against him. I went and retrieved a weapon and used it to repeatedly assault him. It wasn't an act that I wanted to commit but I just couldn't take it no linger (sic) and lost control of my rationale (sic). Before this incident, I was on the honor tier and had not received an infraction since 2008. I had only months to serve before my mandatory release in 2015 and I truly didn't want no trouble at all but as I stated, I felt that if I didn't act first I was subject to be further abused.

ECF 19 at Ex. 1, p. 8. A criminal summons was obtained on January 29, 2014, charging Partlow with first degree assault and related crimes. *Id.* at p. 9.

4

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Pennix must establish that Defendants exhibited deliberate or callous indifference to a specific

5

known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

"The Eighth Amendment's prohibition on cruel and unusual punishments imposes certain basic duties on prison officials." *Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016), citing *Farmer*, 511 U.S. at 832. Those duties "include maintaining humane conditions of confinement, including the provision of adequate medical care and . . . 'reasonable measures to guarantee the safety of the inmates.'" *Id.* "[N]ot every injury suffered by a prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victims safety." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). A two-part inquiry that includes both an objective and a subjective component must be satisfied before liability is established. *See Raynor*, 817 F.3d at 127.

Objectively, the prisoner "must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury" or substantial risk to either injury. *Danser v. Stansberry*, 772 F.3d 340, 346–47 (4th Cir. 2014). The objective inquiry requires this Court to

6

"assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A genuine dispute of fact regarding the extent of the injury suffered precludes summary judgment. *Raynor*, 817 F.3d at 128.

Subjectively, a plaintiff must establish that the prison official involved had "a sufficiently culpable state of mind" amounting to "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834. Evidence establishing a culpable state of mind requires actual knowledge of an excessive risk to the prisoner's safety or proof that prison officials were aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and that the inference was drawn. *Id.* at 837. A plaintiff may "prove an official's actual knowledge of a substantial risk 'in the usual ways including inference from circumstantial evidence" so that "'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Raynor*, 817 F.3d at 128.

Actual knowledge of a substantial risk does not alone impose liability. Where prison officials responded reasonably to a risk, they may be found free of liability. *Farmer*, 511 U.S. at 844. "In failure to protect cases, prison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm." *Raynor*, 817 F.3d at 128 (internal quotation marks omitted) (quoting *Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995)). Failure to take any action in an ongoing assault, however, can amount to deliberate indifference. *See Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997).

Defendants Stanford and Drummond provide declarations under oath stating they were unaware of any conflicts that existed between Pennix and Partlow prior to the assault on Pennix.

7

ECF 19 at Ex. 2 and 3. In his Opposition Response, Pennix attempts to refute Stanford and Drummond's statements by claiming that on July 25, 2013, when he was moved to the housing unit tier and assigned to the cell with Partlow, he told both Stanford and Drummond that he did not want to share a cell with Partlow. ECF 21. He states he told Defendants that Partlow really didn't like him and asked why the original cell to which he was assigned had been given to another inmate, Tracy Williams. Pennix claims that Stanford and Drummond said that Williams had told them he did not get along with Partlow and they had to assign him to a different cell. *Id.* Pennix further claims that he was told he could be moved when another cell became available, but he was never moved despite multiple reassignments taking place in the housing unit over the months that followed. He states that "off and on I would write but never got [an] ans[w]er!" ECF 21 at p. 6.

Pennix does not offer any evidence that Partlow presented a threat of harm to his physical safety in the six months preceding the assault he suffered, nor does he offer evidence that he informed these Defendants that Partlow presented a threat of harm. Pennix similarly failed to present such evidence when he was provided a hearing before an Administrative Law Judge for consideration of his Inmate Grievance Office complaint regarding the facts involved in this case. *See* ECF 19 at Ex. 4, pp. 3 - 4 (Pennix "did not present any evidence that he had identified inmate Partlow as an enemy or that he had communicated to the DOC that inmate Partlow was an enemy."). The ALJ further noted that there was no documentation that Pennix had contacted his case manager during the four to five months before the stabbing. *Id.* at p. 4.

Pennix appears to suggest that Tracy Williams, the other inmate who was allowed to decline a cell assignment with Partlow, could provide testimony or evidence in support of this claim. ECF 21 and 22 (request for subpoena). Williams's testimony regarding his issues with

Partlow are not relevant to whether (a) Partlow was a threat to Pennix and (b) the named Defendants (or any other correctional officials) knew Partlow was a threat to Pennix but failed to act. Absent evidence that there was a known risk of harm to Pennix, his Eighth Amendment claim fails and Defendants are entitled to summary judgment in their favor.

An Order follows.

FEBRUARY 16, 2017
Date

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE